UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

J. Kirk Worrall, III,
and Cecile Worrall


     v.                          Civil No. 13-cv-330-JD
                                     Opinion No. 2013 DNH 158

Federal National Mortgage
Association and Nationstar
Mortgage, LLC


O R D E R

J. Kirk Worrall, III, and Cecile Worrall brought a petition
in state court to enjoin the foreclosure sale of their home by
Federal National Mortgage Association ("FNMA") and Nationstar
Mortgage, LLC.  The state court enjoined the foreclosure
proceeding, and the defendants removed the case to this court.

After FNMA and Nationstar moved to dismiss the claims
against them, the Worralls moved to amend their complaint, adding
two law firms as defendants and alleging new claims.[1]  The motion
was granted, and the amended complaint was filed.  FNMA and
Nationstar have moved to dismiss the claims against them in the
amended complaint.

---

[1]In addition, the Federal Housing Finance Agency ("FHFA")
moved to intervene in the action in its role as conservator for
FNMA, and the motion was granted.  FHFA moved to dismiss the
Fifth Amendment claim against FNMA, Count II.  In response, the
Worralls filed a stipulation of dismissal of Count II.

Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss on the ground that the plaintiff's complaint fails to state a claim on which relief can be granted.  In assessing a complaint for purposes of a motion to dismiss, the court "separate[s] the factual allegations from the conclusory statements in order to analyze whether the former, if taken as true, set forth a plausible, not merely conceivable, case for relief."  Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 276 (1st Cir. 2013) (internal quotation marks omitted).  "If the facts alleged in [the complaint] allow the court to draw the reasonable inference that the defendants are liable for the misconduct alleged, the claim has facial plausibility."  Id. (internal quotation marks omitted).

With their motion to dismiss, the defendants submitted a copy of the Worralls' mortgage document and a copy of the bankruptcy court's discharge order to the Worralls.  When the moving party presents matters outside the pleadings to support a motion to dismiss, the court must either exclude those matters or convert the motion to one for summary judgment.  Fed. R. Civ. P. 12(d).  An exception to Rule 12(d) exists "for documents the authenticity of which [is] not disputed by the parties; for official public records; for documents central to the plaintiffs'

claim; or for documents sufficiently referred to in the
complaint." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d
10, 15 (1st Cir. 2009) (internal quotation marks omitted).  In
addition, the court may consider documents that are susceptible
to judicial notice.  Jorge v. Rumsfeld, 404 F.3d 556, 559 (1st
Cir. 2005).

     With their amended complaint, the Worralls submitted a copy
of the first page of their mortgage document and an unofficial
copy of the "Assignment of Mortgage" of their mortgage to FNMA.
The Worralls submitted the bankruptcy petition and schedules and
their bankruptcy discharge with their objection to the motion to
dismiss.  The mortgage document is central to the claims against
FNMA and Nationstar.  The bankruptcy court's discharge order is a
public record that also may be considered without converting the
motion to one for summary judgment.  See Barany-Snyder v. Weiner,
539 F.3d 327, 332 (6th Cir. 2008); Payne v. Central Defense
Servs., LLC, 2013 WL 3974575, at *4 (W.D. Tenn. Aug. 2, 2013);
Farahzad v. Lawyers Title Ins. Co., 2012 WL 4344325, at *2
(E.D.N.Y. Sept. 21, 2012).  Therefore, the additional documents
submitted by the parties may be considered without converting the
motion to one for summary judgment.

Background[2]

The Worralls bought property at 99 Greenhill Road in Barrington, New Hampshire, with a mortgage and a promissory note dated June 1, 2007.  The promissory note is payable to First Magnus Financial Corporation.  The mortgage states that Mortgage Electronic Registration Systems, Inc. ("MERS") is the mortgagee as nominee for the lender, First Magnus.

In August of 2007, after the Worralls closed on the loan, the New Hampshire Banking Department suspended First Magnus's license to operate as a mortgage banker.  First Magnus filed for bankruptcy protection on August 21, 2007, and its assets were transferred to a liquidating trust by May of 2008.  The Worralls do not know whether First Magnus funded their loan.

Initially, Countrywide Home Loan Servicing held the servicing rights on the Worralls' loan.  When Countrywide merged with Bank of America, Bank of America assumed the servicing rights on the loan.  Bank of America continued to service the loan until May of 2013 when it transferred the servicing rights to Nationstar.

---

[2]The background information is taken from the factual allegations in the amended complaint and the documents submitted with the amended complaint, with the motion to dismiss, and with the objection.

4

On December 12, 2011, MERS assigned the Worralls' mortgage to FNMA.  That transfer was recorded with the Strafford County Registry of Deeds.  Then, on February 3, 2012, MERS attempted to transfer the mortgage to Bank of America, and that transaction is also recorded with the Strafford County Registry of Deeds.

The Worralls filed for bankruptcy protection under Chapter 7 on September 10, 2010.  The bankruptcy court issued a discharge order to the Worralls on December 15, 2010, which discharged them from debts including their liability under the mortgage note. The bankruptcy case was closed on January 5, 2011.  Despite the discharge, the Worralls represent that they continued to make mortgage payments to Bank of America.

The Worralls allege that they never fell behind on their mortgage payments.  They contend that in July of 2011, Bank of America refused their mortgage payments without explanation. They also allege that they worked with Bank of America through 2011 and 2012 to obtain a loan modification without success.  The Worralls contend that Bank of America "dual-tracked" them, meaning that the bank considered them for "loss mitigation" while, at the same time, pursuing foreclosure.

When the servicing rights were transferred to Nationstar in May of 2013, the Worralls again applied for a loan modification. The Worralls contend that Nationstar "dual-tracked" them by

proceeding to foreclosure after the Worralls had filed their application for loan modification. Nationstar retained a law firm to begin foreclosure proceedings on behalf of FNMA.

The foreclosure sale was scheduled for July 8, 2013. The Worralls obtained an order in state court on July 8, enjoining foreclosure until further notice. The defendants then removed the case to this court.

## Discussion

In their amended complaint, the Worralls bring four claims of wrongful foreclosure against FNMA, one claim of wrongful foreclosure against FNMA and Nationstar, and one claim of promissory estoppel against FNMA.[3] FNMA and Nationstar move to dismiss the claims against them on the grounds that the Worralls cannot maintain an action for wrongful foreclosure because the foreclosure sale did not occur, that FNMA has standing and authority to foreclose, that the wrongful foreclosure claim based on "dual tracking" is not actionable, that the breach of contract claim must be dismissed because the Worralls' discharge in bankruptcy eliminated their liability on the mortgage and the

---

[3]The Worralls also bring two claims against the law firm defendants.

note, and that the Worralls did not allege facts to support their
promissory estoppel claim.

A.  Wrongful Foreclosure

The Worralls assert claims of wrongful foreclosure under
five different theories.  Based on the record before the court,
no foreclosure sale has occurred nor is a sale scheduled.[4]

In Count I, the Worralls allege that FNMA is not entitled to
foreclose "because it is questionable as to whether FNMA holds
the Mortgage."  In Count II, the Worralls allege that FNMA is not
entitled to foreclose because "FNMA has not shown that it holds
the original Note."  Count III is based on the theory that
"[b]ecause the Note and Mortgage were bifurcated," that is, were
held by different entities from the time the loan was originated,
FNMA lacks "the power and authority to foreclose."  In Count IV,
the Worralls allege that FNMA is not entitled to foreclose
because FNMA and Nationstar "dual tracked the Petitioners by
considering them for loss mitigation opportunities, while at the
same time referring the Petitioners to foreclosure."  Count V is
titled "Wrongful Foreclosure - Breach of Contract" and asserts

_____

[4]The state court granted the Worralls' ex parte petition for
a temporary injunction against the foreclosure on July 8, 2013,
which has likely expired.  See N.H. Super. Ct. R. 161(a).

that the Worralls did not default on their mortgage because Bank of America stopped accepting their payments.

The New Hampshire Supreme Court has recognized a claim for wrongful foreclosure, brought after the foreclosure sale, where the foreclosing mortgagee did not exercise due diligence in conducting the mortgage sale and, as a result, did not get a fair price for the property.  Murphy v. Fin. Dev. Corp., 126 N.H. 536, 541-45 (1985); see also DeLellis v. Burke, 134 N.H. 607, 612-13 (1991).  In New Hampshire, no wrongful foreclosure action has been addressed under the theories the Worralls raise and before a foreclosure sale occurred.  The Worralls cite no New Hampshire case, or any case, that recognizes a claim for wrongful attempted foreclosure.[5]  See, e.g., Holmes v. Wells Fargo Bank, N.A., 2013 WL 1641382, at *2 (D. Or. Apr. 16, 2013).  Therefore, a necessary element of a wrongful foreclosure claim, as the claim suggests, is that a foreclosure sale must have occurred.

---

[5]Under Massachusetts law, as in New Hampshire, a wrongful foreclosure claim may arise from circumstances in which the mortgagee did not conduct the foreclosure sale in accord with the statutory requirements, but the claim does not lie if the sale was immediately rescinded.  Shaw v. BAC Home Loans Servicing, LP, 2013 WL 789195, at *3 (D. Mass. Mar. 1, 2013).  The First Circuit has interpreted Rhode Island law not to allow a "freewheeling 'wrongful foreclosure' claim" on a theory that "the secured creditor exercised its right based in part on a clandestine purpose unrelated to the default."  Ed Peters Jewelry Co., Inc. v. C & J Jewelry Co., Inc., 124 F.3d 252, 262 (1st Cir. 1997).

In this case, although the foreclosure sale of the Worralls'
property was scheduled and notice was sent, the sale was enjoined
by the state court.  No foreclosure sale has occurred.[6]

The Worralls argue, however, that they have a cause of
action for wrongful foreclosure because FNMA exercised "the power
of sale" when it sent notice of the foreclosure sale.  The
Worralls cite no authority that persuasively supports their
theory that scheduling and providing notice of a foreclosure sale
gives rise to a wrongful foreclosure action under New Hampshire
law.[7]

Therefore, because no foreclosure sale has occurred, the
Worralls have failed to state a claim for wrongful foreclosure.

B.  Theories Underlying Wrongful Foreclosure Claims

In addition, even if the wrongful foreclosure claims are
considered on the merits of their underlying theories, ignoring

---

[6]Oddly, in their amended complaint which was filed on
September 27, 2013, the Worralls ask the court to grant a
temporary injunction "to enjoin FNMA and/or Nationstar from
proceeding with the foreclosure currently scheduled for July 8,
2013 at 10:30 a.m."

[7]It appears that the Worralls' "power of sale" theory may be
based on a misinterpretation of RSA 479:25,II.

the lack of a foreclosure sale, the Worralls have failed to state viable claims.[8]

1.   <u>Counts I, II, and III - Authority to Foreclose</u>

The Worralls allege that FNMA lacks authority to foreclose on their property because it is questionable whether FNMA holds both the note and the mortgage, because FNMA has not shown that it holds the original note, and because the note and mortgage were bifurcated when the loan originated.  FNMA moves to dismiss on the grounds that none of the theories state a cause of action.

The Worralls assert in their objection that MERS's assignment of the mortgage to FNMA may not have been valid because as "nominee" for the lender, MERS lacked authority to make a valid assignment.[9]  The mortgage document, however, granted the mortgage to MERS, as nominee, "and to the successors and assigns of MERS with mortgage covenants and with power of sale."  Doc. 22-2, at 3.  The Worralls have not argued that MERS

---

[8]Because the Worralls are represented by counsel, they are not entitled to the leniency that might be afforded to pro se parties.

[9]To the extent the Worralls allege that the assignment was not valid because MERS's later attempted to assign the mortgage to Bank of America, that theory was not pursued in the objection. Further, a later attempted assignment would not necessarily invalidate the first assignment.

lacked authority to assign the mortgage under the power to
transfer granted by the mortgage document.  See Woods v. Wells
Fargo Bank, N.A., --- F.3d ---, 2013 WL 5543637, at *4-*5 (1st
Cir. Oct. 9, 2013) (discussing MERS function and assignment
authority); Carmack v. Bank of N.Y. Mellon, --- Fed. Appx. ---,
2013 WL 4529871, at *5-*6 (6th Cir. Aug. 27, 2013).

        In Count II, the Worralls assert that FNMA has not shown
that it holds the original note.  In Count III, the Worralls
challenge FNMA's authority to foreclose on the theory that
"bifurcation" of the note and mortgage documents precludes the
right to foreclose.  The bifurcation theory was considered and
rejected in Galvin v. EMC Mortg. Corp., 2013 WL 1386614, at *5-*8
(D.N.H. Apr. 4, 2013).  The Worralls rely on New Hampshire
Superior Court decisions, attempt to distinguish Galvin in a
footnote on the grounds that it is an unpublished decision (as
are the Superior Court decisions cited by the Worralls), and
assert that this court must follow the decisions of the New
Hampshire Supreme Court on state law.  The Worralls do not cite a
contrary decision of the New Hampshire Supreme Court.

        In Galvin, the court noted that a series of New Hampshire
Superior Court decisions have "lent credence" to the bifurcation
theory.  2013 WL 1386614, at *7.  While New Hampshire law
recognizes the common law principle that the mortgage and note

must be transferred together, the parties' intent can overcome
that principle.  Id. at *8 (quoting Dow v. Bank of N.Y. Mellon
Tr. Co., No. 218-2011-CV-1297, slip op. at 14-16 (N.H. Super. Ct.
Feb. 7, 2012)).  In Galvin as here, the note and the mortgage
were held by separate entities from the inception of the loan and
mortgage.  Id.  Therefore, the holder of the mortgage can
foreclose without also holding the note.  Id.

Based on the erroneous assumption that FNMA must hold both
the note and the mortgage to foreclose, the Worralls argue that
FNMA must be required to show that it has possession of the
original note.  If the note were at issue, the Worralls would
have the burden of proving that FNMA does not have the note or
that the note is invalid.  Moore v. Mortg. Elec. Regis. Sys.,
Inc., 2013 WL 1773647, at *8-*9 (D.N.H. Apr. 25, 2013).  The
Worralls' speculation is insufficient to cast doubt on FNMA's
authority to enforce the note.  See id. at *9.  Further, FNMA is
not required to hold both the note and the mortgage to have
standing to foreclose.


2.  Count IV - Dual Tracking

The Worralls allege that Bank of America is subject to a
consent judgment that prohibits "dual tracking," meaning
simultaneously considering mortgage mitigation while scheduling

foreclosure.  The Worralls further allege that FNMA, through Bank of America, and Nationstar dual tracked them.  In their objection to the motion to dismiss, the Worralls contend that FNMA and Nationstar are judicially estopped from taking positions here that are contrary to positions taken in a prior case involving Bank of America that resulted in a consent judgment.

"Judicial estoppel is used to prevent a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding."  Rockwood v. SKF USA Inc., 687 F.3d 1, 11 (1st Cir. 2012) (internal quotation marks omitted).  For judicial estoppel to apply, "the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive," and "the responsible party must have succeeded in persuading a court to accept its prior position."  Id. (internal quotation marks omitted).

The Worralls allege that Bank of America "is subject to a consent judgment prohibiting it from 'dual tracking' homeowners for foreclosure while at the same time considering them for loss mitigation."[10]  Am. Compl. ¶ 50.  The Worralls did not provide a

---

[10]The Worralls also state: "Upon information and belief, in or around October 2012, BOA consented to a judgment, or otherwise agreed to a settlement, making dual tracking unlawful."  Am. Compl. ¶ 24.

copy of a consent judgment, a citation to the case where the judgment was entered, or even allegations as to the specific provisions of the judgment.[11]  Further, Bank of America is not a party in this case.  The Worralls state that Bank of America pursued loan modification negotiations with them, Bank of America assigned its loan servicing rights to Nationstar, and now Nationstar and FNMA "take the opposite position, unfairly, to remove themselves from this action and foreclose."  Based on that reasoning, the Worralls assert that Nationstar and FNMA are judicially estopped from not honoring Bank of America's consent judgment.

The Worralls did not sufficiently allege facts to support the judicial estoppel theory.  They did not allege what positions were taken in the prior litigation or how those positions conflict with positions taken here.  They also do not allege a basis to apply judicial estoppel to FNMA and Nationstar based on Bank of America's consent judgment.

Further, to the extent the Worralls are relying on the consent judgment discussed in Ripa v. Fed. Nat. Mortg. Ass'n,

---

[11]They may be referring to a consent judgment between the United States, all fifty states, and several banks, including Bank of America.  See Ripa v. Fed. Nat. Mortg. Ass'n, 2013 WL 5705426, at *5 (D. Ariz. Oct. 21, 2013); see also Sanguinetti v. CitiMortgage, 2013 WL 4838765, at *2 (N.D. Cal. Sept. 11, 2013).

2013 WL 5705426, at *5 (D. Ariz. Oct. 21, 2013), which they have
not alleged or argued in their objection, "enforcement of the
Consent Judgment is expressly limited to the parties." Id. at
*2. In addition, promises made in the consent judgment pertain
only to the parties. Id.

   The Worralls have not stated a claim of wrongful foreclosure
due to "dual tracking" based on judicial estoppel. Further,
because lenders cannot be required to modify or restructure
loans, the "dual tracking" theory will not support a claim of
breach of the covenant of good faith and fair dealing. See,
e.g., Schaefer v. IndyMac Mortg. Servs., 2012 WL 4929094, at *6
(D.N.H. Oct. 16, 2012) (aff'd 731 F.3d 88 (1st Cir. 2013));
Moore, 848 F. Supp. 2d at 129-30.

   Therefore, Count IV must be dismissed.


   3.   Count V - Breach of Contract

   The Worralls allege that FNMA breached the mortgage
agreement by refusing their mortgage payments when the mortgage
agreement only allows foreclosure in the event of default. The
defendants contend that the claim must be dismissed because they
did not breach the mortgage agreement. Instead, by pursuing
bankruptcy and being discharged from all debts, including their

mortgage obligations, the Worralls defaulted. The defendants further assert that they are allowed to foreclose.

Following a discharge in bankruptcy, an automatic injunction precludes collection of discharged debts. In re Canning, 706 F.3d 64, 69 (1st Cir. 2013). Despite the broad scope of the discharge injunction, a secured creditor is not barred from "recovering on valid prepetition liens, which, unless modified or avoided, ride through bankruptcy unaffected and are enforceable in accordance with state law." Id.

The Worralls admit that they did not reaffirm the secured debt on their property or make other arrangements with the defendants to avoid foreclosure. Under the discharge injunction, the defendants could not collect for the debt that had been discharged. Therefore, the defendants properly rejected the Worralls' payments, and the Worralls have not alleged a claim for breach of contract.

B. Promissory Estoppel - Count VI

New Hampshire recognizes a cause of action for promissory estoppel. See Marbucco Corp. v. City of Manchester, 137 N.H. 629, 633 (1992); Great Lakes Aircraft Co. v. City of Claremont, 135 N.H. 270, 290 (1992); Panto v. Moore Bus. Forms, Inc., 130 N.H. 730, 738 (1988); see also Jackson v. Morse, 152 N.H. 48, 52

16

(2005). "Promissory estoppel . . . provides a basis for recovery when no contract exists; if a promisor should reasonably expect a promisee to rely on a promise, and the promisee in fact does so, courts may enforce the promise to avoid injustice." In re Moultonborough Hotel Group, LLC, 726 F.3d 1, 7 (1st Cir. 2013).

In support of their promissory estoppel claim, the Worralls allege that Bank of America made promises to them on behalf of FNMA that "they could engage in loss mitigation to avoid foreclosure." They further allege that Bank of America instructed them to hire Default Solutions, which they did. They assert that although they complied with Default Solutions' requirements, they were referred to foreclosure.

FNMA moves to dismiss the claim on the grounds that the Worralls do not allege that Bank of America promised that FNMA would not foreclose. Bank of America's alleged statement that the Worralls could engage in loss mitigation to avoid foreclosure, if it were construed to be a promise, did not promise that the Worralls' efforts toward loss mitigation would be successful in avoiding foreclosure. Therefore, no promise was broken, and the Worralls could not reasonably expect FNMA not to foreclose based on Bank of America's alleged promise.

Conclusion

For the foregoing reason, the motion to dismiss filed by FNMA and Nationstar (document no. 22) is granted.  Counts I through VI are dismissed.


SO ORDERED.


_____
Joseph A. DiClerico, Jr.
United States District Judge

November 20, 2013

cc:  Howard N. Cayne, Esquire
     Mark Sutherland Derby, Esquire
     Christopher J. Fischer, Esquire
     Stephen T. Martin, Esquire
     David W. Rayment, Esquire
     Asim Varma, Esquire